**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **WACOM CO., LTD.,** | |
| **Plaintiff,** | **Civil Action No.:  2:24-cv-702** |
| **v.** | |
| **SHENZHEN QIANFENYI INTELLIGENT TECHNOLOGY CO., LTD.,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Wacom Co., Ltd. ("Plaintiff" or "Wacom") files this Complaint for patent infringement against Shenzhen Qianfenyi Intelligent Technology Co., Ltd. that does business as Maxeye[1] ("Defendant" or "Maxeye").  Wacom alleges the following:

### THE PARTIES

1.      Plaintiff Wacom is an entity organized under the laws of Japan and has its principal place of business in Saitama, Japan.

2.      On information and belief, Defendant Maxeye is a foreign corporation organized and existing under the laws of the China and has a principal place of business located at Room 2101, Building 3, Nanshan i Park Chongwen, 3370 Liuxian Avenue, Nanshan District, Shenzhen, 518073, China.

---

[1] https://www.maxeye.com/about/.

1

## JURISDICTION AND VENUE

3.      This is an action for patent infringement, under the patent laws of the United States,

35 U.S.C. § 271, *et seq.*, including § 271(a), § 271(b), § 271(c), and § 271(g).

4.      This Court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1338(a).

5.      This Court has personal jurisdiction over Maxeye.

6.      On information and belief, Maxeye has purposefully directed sales of the infringing

products to residents in this Judicial District, the State of Texas, and elsewhere in the United States.

The patent infringement claims alleged herein arise at least in part out of or are related to the

foregoing activities.  Maxeye should reasonably and fairly anticipate being brought into the court

in the State of Texas and this Judicial District.

7.      On information and belief, Maxeye has placed, and continues to place, the

infringing products into the stream of commerce with knowledge or understanding that such

products are being, and will continue to be, imported into the United States, sold, offered for sale,

and/or used in the State of Texas and this Judicial District.

8.      Maxeye has sold the infringing products to residents in the United States.  On

information and belief, Maxeye has sold the infringing products to residents in this Judicial District

and the State of Texas.

9.      This Court also has personal jurisdiction over Maxeye pursuant to Federal Rule of

Civil Procedure 4(k)(2).

10.     On information and belief, Maxeye is not resident in the United States. Because

Maxeye is not a resident in the United States, venue is proper pursuant to 28 U.S.C. § 1391(c)(3)

and it may be sued in any judicial district.

## THE INFRINGING PRODUCTS

11.    Maxeye makes, offers to sell and sells branded and non-branded infringing stylus products, including at least under the names Maxeye, Penoval, and Metapen, for use, sale, distribution, and exportation to and importation into the United States.

12.    Maxeye offers to sell and sells branded and non-branded infringing styluses under different model numbers for use, sale, distribution, and exportation to and importation into the United States, including but not limited to models ME01, ME-USI707, ME-USI400, ME-USI127, ME-USI732, ME-USI306, ME-USI256, QG01, ME-USI260, ME-USI141, JITP100, ME-USI140, ME-USI126 / SA301H, ME-USI150, ME-USI100.

13.    Maxeye has also offered to sell and has sold Maxeye, Penoval, and Metapen styluses in the United States, including through Walmart.    Examples include: https://www.amazon.com/dp/B0BQ89FPSR;        https://www.amazon.com/dp/B09JCCW94F; https://www.amazon.com/dp/B0CFL2N74C;        https://www.amazon.com/dp/B0CM6HFKZ4; https://www.amazon.com/dp/B0CX4MK334;        https://www.amazon.com/dp/B0CX87NSNW; https://www.amazon.com/dp/B0CMX315NG;        https://www.amazon.com/dp/B0CP4YV9XN; https://www.amazon.com/dp/B0CWTWHJZP;        https://www.amazon.com/dp/B0D4M8J2R7; https://www.amazon.com/dp/B0D4M6SR9P;        https://www.amazon.com/dp/B0D4M12PYP; https://www.amazon.com/dp/B0D4LWSLTG;    https://www.amazon.com/dp/B0CX8PMRXH; https://www.amazon.com/dp/B0CVX46FWV;        https://www.amazon.com/dp/B0CKVV1J5T; https://www.amazon.com/dp/B0B1CV5586;        https://www.walmart.com/ip/Penoval-USI2-0-Stylus-Pen-Chromebook-4096-Levels-Pressure-Lenovo-chromebook-Duet-ASUS-C436-HP-X360-12b-14b-Spare-Tip-Included/3193208728;        https://www.walmart.com/ip/Metapen-Chromebook-Stylus-Pen-USI-Stylus-pen-for-Lenovo-HP-Samsung/2637782769.    Maxeye has

also sold styluses to others with the knowledge and expectation that such styluses would be included in or with products sold in the United States.

14.     The infringing products include Maxeye branded and non-branded styluses that are made, used, offered for sale, sold or distributed within, or exported to or imported into the United States, including but not limited to those advertised, offered for sale and sold under the names of Maxeye, Penoval, and Metapen.

## THE ASSERTED PATENTS

15.     Wacom is the assignee of all right, title and interest in United States Patent Nos. 9,280,220 ("the '220 patent") attached as Exhibit 1, 9,977,519 ("the '519 patent") attached as Exhibit 2, 10,108,277 ("the '277 patent") attached as Exhibit 3, 10,437,356 ("the '356 patent") attached as Exhibit 4, 9,690,399 ("the '399 patent") attached as Exhibit 5, 9,933,866 ("the '866 patent") attached as Exhibit 6, and 10,768,720 ("the '720 patent") attached as Exhibit 7 (together, the "Patents-in-Suit"), including the right to sue and to recover for any and all infringement thereof.

## NOTICE OF THE ASSERTED PATENTS

16.     Maxeye has been on notice of Wacom's patents and Maxeye's infringing products and activities.

17.     At least as early as December 4, 2023, Wacom sent a letter to Maxeye notifying Maxeye that its products infringed at least the '220 patent, the '519 patent, the '277 patent, and the '356 patent.  On information and belief, Maxeye also learned about the Patents-in-Suit earlier or on subsequent occasions, or was willfully blind regarding knowledge of the above-identified patents and other patents.

18.     Since being notified, Maxeye has failed and refused to agree to a license for Wacom's patents and has essentially ignored Wacom's licensing overtures.

4

## FIRST COUNT: INFRINGEMENT OF THE '220 PATENT

19.     Wacom incorporates by reference the allegations contained in the foregoing paragraphs.

20.     Defendant has been and continues to directly infringe one or more claims of the '220 patent under 35 U.S.C. § 271(a), including at least claim 1 of the '220 patent, in this District by making, using, importing, offering to sell, and selling in or into the United States the infringing products, such as  the ME-USI306 stylus, that infringe at least exemplary claim 1 of the '220 patent literally or by the doctrine of equivalents.

21.     As an example, the ME-USI306 stylus is "a stylus."



22.     The ME-USI306 stylus includes "one or more sensors." Maxeye's styluses have a pressure sensor for detection of writing pressure. https://www.maxeye.com/for-chromebook/. For example, the ME-USI306 stylus includes a pressure sensor with "4096 pressure sensitivity." https://www.amazon.com/dp/B0BQ89FPSR.

23.     The ME-USI306 stylus includes "one or more electrodes configured to communicate with a device by receiving signals from and transmitting signals to a touch sensor of the device." It allows users to digitally write, draw, and sketch on devices with touch sensors, such as a tablet device. The ME-USI306 stylus includes at least two electrodes to communicate with a device, such as a tablet, by receiving signals from the touch screen of the tablet (uplink communication) and transmitting signals to the touch sensor of the tablet (downlink communication).





24.     The ME-USI306 stylus includes "one or more computer-readable non-transitory storage media embodying logic that is operable when executed to receive sensor data from the one or more sensors."  The ME-USI306 stylus has a circuit board that includes a memory to receive, and at least temporarily store, the pressure sensor data for further processing.





25.     The ME-USI306 stylus includes one or more computer-readable non-transitory storage media embodying logic that is operable when executed to "receive a first signal generated by the device."  The ME-USI306 stylus communicates with the tablet through uplink and downlink

communication.  During uplink communication, the ME-USI306 stylus receives a signal generated by the tablet device.

26.    The ME-USI306 stylus includes one or more computer-readable non-transitory storage media embodying logic that is operable when executed to "generate a second signal by modulating a carrier signal based on the sensor data" and to "transmit to the device, in response to the first signal, the second signal, the sensor data being obtainable by demodulating the second signal." The stylus transmits a signal down to the tablet device. During the downlink communication, the stylus generates a signal based at least in part on the pressure data and transmits the signal – that includes pressure data - to the tablet. The downlink signal is generated by modulating a carrier signal with the sensor data.  Following transmission to the tablet device, that modulated signal can then be demodulated, so that the tablet device can extract the original pressure information.

27.    Defendant, with knowledge of the '220 patent at least as early as December 2023, also indirectly infringes the '220 patent under 35 U.S.C. § 271(b) and (c) by actively inducing and contributing to the infringement by others.

28.    Defendant has induced and continues to induce others to infringe at least claim 1 of the '220 patent by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe.  For example, Defendant encourages and instructs its customers and end users to obtain, install, configure, use, and activate the infringing products, with knowledge that the induced acts constitute infringement. Maxeye intentionally instructs its customers and end users to infringe through support information such as websites, videos, demonstrations, and other published information. *See, e.g.*, https://www.maxeye.com/for-chromebook/ (advertising features of Maxeye styluses);

7

https://www.amazon.com/dp/B0BQ89FPSR/ (advertising features of the ME-USI306 stylus); https://www.youtube.com/watch?v=HkAqYCNxPQQ (describing the use and manufacturing of Maxeye styluses).  For example, Maxeye advertises that the Accused Products can draw, sketch, color, take notes, and mark up PDFs on a touch screen device. *Id.*  The Accused Products can connect to a touch screen device and implement infringing functionality.   Defendant has knowingly induced infringement since at least as early as December 2023.

29.     Defendant is liable as a contributory infringer of the '220 patent. Each of the infringing products is a material component for use in practicing the '220 patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use.  *See, e.g.*, https://www.maxeye.com/for-chromebook/ (advertising features of Maxeye styluses); https://www.amazon.com/dp/B0BQ89FPSR/ (advertising features of the ME-USI306 stylus); https://www.youtube.com/watch?v=HkAqYCNxPQQ (describing the use and manufacturing of Maxeye styluses).

30.     With knowledge of the '220 patent, Defendant has and continues to willfully, deliberately, and intentionally infringe, directly and indirectly, the '220 patent.

## SECOND COUNT: INFRINGEMENT OF THE '519 PATENT

31.     Wacom incorporates by reference the allegations contained in the foregoing paragraphs.

32.     Defendant has been and continues to directly infringe one or more claims of the '519 patent under 35 U.S.C. § 271(a), including at least claim 20 of the '519 patent, in this District by making, using, importing, offering to sell, and selling in or into the United States the infringing products, such as  the ME-USI306 stylus, that infringe at least exemplary claim 1 of the '519 patent literally or by the doctrine of equivalents.

33.     For example, the ME-USI306 stylus is "an active pen."  It allows users to digitally write, draw, and sketch on devices with touch sensors.



34.     The ME-USI306 stylus includes "an identification (ID) register storing a pen identification (ID)."  The ME-USI306 stylus works with a device, such as a tablet, and the tablet device assigns the stylus an identification number, which is stored in the register of the ME-USI306 stylus.

35.     The ME-USI306 stylus includes "a button."



36.     The ME-USI306 stylus includes "a transceiver" that has a transmitter component capable of transmitting a signal and a receiver component capable of receiving a signal.

37.     The receiver component of the ME-USI306 stylus is configured to "receive, from a first input device, a current beacon signal comprising an upstream packet specifying the pen ID, a timeslot, and a frequency."  The ME-USI306 stylus is configured to communicate with a device, such as a tablet, by first receiving a beacon signal from the tablet device to establish a connection. The beacon signal includes a unique value assigned to the ME-USI306 stylus, the stylus ID. The current beacon signal also specifies the timeslot and the frequency that the ME-USI306 stylus uses to transmit data back to the tablet device.

38.     Additionally, "the current beacon signal initiates a current beacon period comprising a plurality of timeslots." The ME-USI306 stylus first communicates with the device by receiving a current beacon signal from the device, which starts a two-way communication between the stylus and the device. The beacon signal initiates a beacon period that includes multiple timeslots which can be used by the ME-USI306 stylus to send data to the tablet device. The tablet device can also use the timeslots to communicate with different styluses.

39.     The transmitter component of the ME-USI306 stylus is configured to "transmit, to the first input device and during the timeslot specified in the upstream packet, a downstream packet comprising a status of the button using the frequency specified in the upstream packet." The ME-USI306 stylus communicates with the tablet device through uplink and downlink communications. The beacon signal carries upstream data packets. The current beacon signal also specifies the timeslot and the frequency that the ME-USI306 stylus uses to transmit data back to the device, the data including a status of the button. On information and belief, the button can be used as a highlighter, an eraser, and a sticky note.

40.     Defendant, with knowledge of the '519 patent at least as early as December 2023, also indirectly infringes the '519 patent under 35 U.S.C. § 271(b) and (c) by actively inducing and contributing to the infringement by others.

41.     Defendant has induced and continues to induce others to infringe at least claim 1 of the '519 patent by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe. For example, Defendant encourages and instructs its customers and end users to obtain, install, configure, use, and activate the infringing products, with knowledge that the induced acts constitute infringement. Maxeye intentionally instructs its customers and end users to infringe through support information such as websites, videos,

demonstrations, and other published information. *See, e.g.*, https://www.maxeye.com/for-chromebook/ (advertising features of Maxeye styluses); https://www.amazon.com/dp/B0BQ89FPSR/ (advertising features of the ME-USI306 stylus); https://www.youtube.com/watch?v=HkAqYCNxPQQ (describing the use and manufacturing of Maxeye styluses). For example, Maxeye advertises that the Accused Products can draw, sketch, color, take notes, and mark up PDFs on a touch screen device. *Id.* The Accused Products can connect to a touch screen device and implement infringing functionality. Defendant has knowingly induced infringement since at least as early as December 2023.

42.     Defendant is liable as a contributory infringer of the '519 patent. Each of the infringing products is a material component for use in practicing the '519 patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use. *See, e.g.*, https://www.maxeye.com/for-chromebook/ (advertising features of Maxeye styluses); https://www.amazon.com/dp/B0BQ89FPSR/ (advertising features of the ME-USI306 stylus); https://www.youtube.com/watch?v=HkAqYCNxPQQ (describing the use and manufacturing of Maxeye styluses).

43.     With knowledge of the '519 patent, Defendant has and continues to willfully, deliberately, and intentionally infringe, directly and indirectly, the '519 patent.

**THIRD COUNT: INFRINGEMENT OF THE '277 PATENT**

44.     Wacom incorporates by reference the allegations contained in the foregoing paragraphs.

45.     Defendant has been and continues to directly infringe one or more claims of the '277 patent under 35 U.S.C. § 271(a), including at least claim 1 of the '277 patent, in this District by making, using, importing, offering to sell, and selling in or into the United States the infringing

products, such as  the ME-USI306 stylus, that infringe at least exemplary claim 1 of the '277 patent literally or by the doctrine of equivalents.

     46.     For example, the ME-USI306 stylus is "a pen-shaped position indicator configured to capacitively couple with a sensor surface." It allows users to digitally write, draw, and sketch on devices with touch sensors. The ME-USI306 stylus is configured to capacitively couple with the sensor surface of a device, such as a tablet.



     47.     The ME-USI306 stylus has "a pen-shaped body having a pen-tip portion."





     48.     The ME-USI306 stylus has "a first electrode arranged at a first position of the pen-tip portion" and "a second electrode arranged at a second position of the pen-tip portion different from the first position, the second position being off an axis of the pen-shaped position indicator," as shown in the picture immediately below.



49.     The ME-USI306 stylus has "a signal production circuit configured to generate first and second signals that are distinguishable from each other."  The ME-USI306 stylus has a circuit board that is configured to generate two different signals. The ME-USI306 stylus also supports tilt function. https://www.amazon.com/dp/B0BQ89FPSR. The tilt function is accomplished by using two different signals generated by the circuit board.



50.     The ME-USI306 stylus includes "conductive lines extending between the signal production circuit and the first and second electrodes, respectively, wherein the first and second signals generated by the signal production circuit, in operation, are transmitted to the first and second electrodes via the conductive lines." As shown immediately below, the ME-USI306 stylus has conductive lines connecting the circuit board and the electrodes. The signals generated by the signal production circuit are transmitted to the electrodes via the conductive lines.



51.    In the ME-USI306 stylus, "the first and second electrodes are configured to form first and second capacitive relationships with the sensor surface, respectively, to generate detection signals in the sensor surface based on which angle information of the pen-shaped position indicator is obtainable." The electrodes of the stylus form capacitive relationships with the touch sensor surface of the tablet device to detect capacitive change and generate detection signals. Based on the distribution of the signals, the tilt and angle information of the ME-USI306 stylus can be obtained.



52.     Defendant, with knowledge of the '277 patent at least as early as December 2023, also indirectly infringes the '277 patent under 35 U.S.C. § 271(b) and (c) by actively inducing and contributing to the infringement by others.

53.     Defendant has induced and continues to induce others to infringe at least claim 1 of the '277 patent by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe. For example, Defendant encourages and instructs its customers and end users to obtain, install, configure, use, and activate the infringing products, with knowledge that the induced acts constitute infringement. Maxeye intentionally instructs its customers and end users to infringe through support information such as websites, videos, demonstrations, and other published information. *See, e.g.*, https://www.maxeye.com/for-chromebook/ (advertising features of Maxeye styluses); https://www.amazon.com/dp/B0BQ89FPSR/ (advertising features of the ME-USI306 stylus); https://www.youtube.com/watch?v=HkAqYCNxPQQ (describing the use and manufacturing of Maxeye styluses). For example, Maxeye advertises that the Accused Products can draw, sketch, color, take notes, and mark up PDFs on a touch screen device. *Id.*  The Accused Products can connect to a touch screen device and implement infringing functionality. Defendant has knowingly induced infringement since at least as early as December 2023.

54. Defendant is liable as a contributory infringer of the '277 patent. Each of the infringing products is a material component for use in practicing the '277 patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use. *See, e.g.*, https://www.maxeye.com/for-chromebook/ (advertising features of Maxeye styluses); https://www.amazon.com/dp/B0BQ89FPSR/ (advertising features of the ME-USI306 stylus); https://www.youtube.com/watch?v=HkAqYCNxPQQ (describing the use and manufacturing of Maxeye styluses).

55. With knowledge of the '277 patent, Defendant has and continues to willfully, deliberately, and intentionally infringe, directly and indirectly, the '277 patent.

### FOURTH COUNT: INFRINGEMENT OF THE '356 PATENT

56. Wacom incorporates by reference the allegations contained in the foregoing paragraphs.

57. Defendant has been and continues to directly infringe one or more claims of the '356 patent under 35 U.S.C. § 271(a), including at least claim 1 of the '356 patent, in this District by making, using, importing, offering to sell, and selling in or into the United States the infringing products, such as the ME-USI306 stylus, that infringe at least exemplary claim 1 of the '356 patent literally or by the doctrine of equivalents.

58. For example, the ME-USI306 stylus is "a stylus, which communicates data to a touch-sensor controller" of a tablet device. The ME-USI306 stylus allows users to digitally write, draw, and sketch on the tablet device.



59.    The ME-USI306 stylus includes "one or more electrodes included in a tip."





60.    The ME-USI306 stylus includes "a computer-readable non-transitory storage medium embodying logic that is configured when executed to receive, by the one or more electrodes and an analog front end, synchronization signals transmitted from a touch sensor coupled to the touch-sensor controller, and convert the synchronization signals into sequences of digital signals."  The ME-USI306 stylus has a circuit board that includes a storage medium to store instructions for signal processing. The ME-USI306 stylus includes one or more electrodes and an analog front end that receive data packets transmitted from a touch sensor coupled to the touch-sensor controller of the tablet device. The data packets include synchronization signals that are

17

used to align the time reference between the tablet device and the stylus. The circuit board also converts the synchronization signals into sequences of digital signals.



61.     The circuit board of the ME-USI306 stylus is configured to "feed the sequences of digital signals received in different periods into a memory; correlate each of the sequences of digital signals with a digital data defined by a wide-band code to generate multiple correlations; and synchronize, prior to the stylus starting communication of the data to the touch-sensor controller, one or more timings for the communication based at least in part on one or more of the multiple correlations."  After the stylus receives and converts the beacon synchronization signals, the sequences of the signals are fed into the memory of the circuit board of the ME-USI306 stylus. The data from the tablet device is converted into a wideband signal. The stylus reverses the process and de-spreads the signal back into the original data format using the same spreading code. The stylus uses code match to establish a common timing reference between the tablet device and the stylus. The ME-USI306 stylus uses this timing reference to transmit data back to the tablet device.

62.     Defendant, with knowledge of the '220 patent at least as early as December 2023, also indirectly infringes the '356 patent under 35 U.S.C. § 271(b) and (c) by actively inducing and contributing to the infringement by others.

63.     Defendant has induced and continues to induce others to infringe at least claim 1 of the '356 patent by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe.  For example, Defendant encourages and instructs its customers

and end users to obtain, install, configure, use, and activate the infringing products, with knowledge that the induced acts constitute infringement. Maxeye intentionally instructs its customers and end users to infringe through support information such as websites, videos, demonstrations, and other published information. *See, e.g.*, https://www.maxeye.com/for-chromebook/ (advertising features of Maxeye styluses); https://www.amazon.com/dp/B0BQ89FPSR/ (advertising features of the ME-USI306 stylus); https://www.youtube.com/watch?v=HkAqYCNxPQQ (describing the use and manufacturing of Maxeye styluses). For example, Maxeye advertises that the Accused Products can draw, sketch, color, take notes, and mark up PDFs on a touch screen device. *Id.*  The Accused Products can connect to a touch screen device and implement infringing functionality. Defendant has knowingly induced infringement since at least as early as December 2023.

64.    Defendant is liable as a contributory infringer of the '356 patent. Each of the infringing products is a material component for use in practicing the '356 patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use. *See, e.g.*, https://www.maxeye.com/for-chromebook/ (advertising features of Maxeye styluses); https://www.amazon.com/dp/B0BQ89FPSR/ (advertising features of the ME-USI306 stylus); https://www.youtube.com/watch?v=HkAqYCNxPQQ (describing the use and manufacturing of Maxeye styluses).

65.    With knowledge of the '356 patent, Defendant has and continues to willfully, deliberately, and intentionally infringe, directly and indirectly, the '356 patent.

## FIFTH COUNT: INFRINGEMENT OF THE '399 PATENT

66.    Wacom incorporates by reference the allegations contained in the foregoing paragraphs.

67.     Defendant has been and continues to directly infringe one or more claims of the '399 patent under 35 U.S.C. § 271(a), including at least claim 1 of the '399 patent, in this District by making, using, importing, offering to sell, and selling in or into the United States the infringing products, such as the ME-USI306 stylus, that infringe at least exemplary claim 1 of the '399 patent literally or by the doctrine of equivalents.

68.     For example, the ME-USI306 stylus is a capacitive stylus and includes "a signal decoding and modulation processing system for a capacitive stylus." The ME-USI306 stylus allows users to digitally write, draw, and sketch on devices with touch sensors. The ME-USI306 stylus receives a beacon signal such as from a tablet device and decodes the received signal. The ME-USI306 stylus further performs modulation on the signal that is transmitted from the stylus to the tablet device.



69.     The ME-USI306 stylus includes "a micro controller unit" and "a digital processing unit, electrically connected with the micro controller unit." The ME-USI306 stylus has a circuit board that includes a micro controller unit and a digital processing unit. The micro controller unit and the digital processing unit are electrically connected to manage the transmission and reception of signals between the stylus and the tablet device.



70.     The digital processing unit of the ME-USI306 stylus includes "a decoding module, configured to decode an input signal from a touch panel so as to correspondingly generate a decoded input content, and the decoded input content is transmitted to the micro controller unit, wherein the micro controller unit generates a feedback data according to the decoded input content."  On information and belief, the data from the touch panel of a tablet device to the stylus (uplink communication) is encoded using direct sequence spread spectrum (DSSS) modulation. To obtain the data, the ME-USI306 stylus includes a decoding module to decode that data. The micro controller unit receives the decoded data and based on that, generates response data, the feedback data.

71.     The digital processing unit of the ME-USI306 stylus includes "a modulating module, configured to receive the feedback data from the micro controller unit and perform a modulation process accordingly so as to generate a differential binary phase shift keying (DBPSK) output signal, which is sent back to the touch panel."  The ME-USI306 stylus includes a modulating module that uses differential binary phase shift keying (D-BPSK) to encode data to generate a downlink signal, which is transmitted to the touch panel of the tablet device. The modulating module is also configured to receive the feedback data.

72.     The decoding module of the ME-USI306 stylus includes "a shift register, configured to receive the input signal from the input of the decoding module, and receive a clock signal from the micro controller unit" and "a direct sequence spread spectrum (DSSS) code, wherein the shift register performs XOR operation and summation operation with the DSSS code, in order to correspondingly generate an operation result."  During uplink communication, the data transmitted from the tablet device to the stylus is generated using direct sequence spread spectrum

(DSSS) modulation and shift registers that perform XOR operation. The stylus reverses the process and de-spreads the signal back into the original data format.

73.     Defendant, with knowledge of the '399 patent at least as early as the date of filing of this Complaint, also indirectly infringes the '399 patent under 35 U.S.C. § 271(b) and (c) by actively inducing and contributing to the infringement by others.

74.     Defendant has induced and continues to induce others to infringe at least claim 1 of the '399 patent by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe.  For example, Defendant encourages and instructs its customers and end users to obtain, install, configure, use, and activate the infringing products, with knowledge that the induced acts constitute infringement. Maxeye intentionally instructs its customers and end users to infringe through support information such as websites, videos, demonstrations, and other published information. *See, e.g.*, https://www.maxeye.com/for-chromebook/ (advertising features of Maxeye styluses); https://www.amazon.com/dp/B0BQ89FPSR/ (advertising features of the ME-USI306 stylus); https://www.youtube.com/watch?v=HkAqYCNxPQQ (describing the use and manufacturing of Maxeye styluses). For example, Maxeye advertises that the Accused Products can draw, sketch, color, take notes, and mark up PDFs on a touch screen device. *Id.*  The Accused Products can connect to a touch screen device and implement infringing functionality. Defendant has knowingly induced infringement at least since the filing date of this Complaint.

75.     Defendant is liable as a contributory infringer of the '399 patent. Each of the infringing products is a material component for use in practicing the '399 patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use. *See, e.g.*, https://www.maxeye.com/for-chromebook/ (advertising features of Maxeye styluses);

https://www.amazon.com/dp/B0BQ89FPSR/ (advertising features of the ME-USI306 stylus); https://www.youtube.com/watch?v=HkAqYCNxPQQ (describing the use and manufacturing of Maxeye styluses).

76.     With knowledge of the '399 patent, Defendant has and continues to willfully, deliberately, and intentionally infringe, directly and indirectly, the '399 patent.

### SIXTH COUNT: INFRINGEMENT OF THE '866 PATENT

77.     Wacom incorporates by reference the allegations contained in the foregoing paragraphs.

78.     Defendant has been and continues to directly infringe one or more claims of the '866 patent under 35 U.S.C. § 271(a), including at least claim 1 of the '866 patent, in this District by making, using, importing, offering to sell, and selling in or into the United States the infringing products, such as the ME-USI306 stylus, that infringe at least exemplary claim 1 of the '866 patent literally or by the doctrine of equivalents.

79.     For example, the ME-USI306 stylus is "a stylus." It allows users to digitally write, draw, and sketch on devices with touch sensors.



80.     The ME-USI306 stylus has "one or more electrodes."





81.     The ME-USI306 stylus includes "one or more computer-readable non-transitory storage media embodying logic for transmitting signals wirelessly to a device through a touch sensor of the device, at least some of the signals comprising high-voltage signals associated with a high voltage comprising a relatively large potential difference compared to a voltage within a voltage range of approximately 1 to approximately 3 volts" and the ME-USI306 includes "a component operable to convert the voltage of approximately 1 to 3 volts to the high voltage." For example, the ME-USI306 stylus has a circuit board that includes a storage medium to store instructions for communicating with a tablet device. The stylus transmits data packets to a tablet device through the touch sensor of the tablet device. The ME-USI306 stylus uses a AAAA battery, which has a voltage of around 1.5 volts and between the range of 1 to 3 volts. On information and belief, the peak-to-peak voltage at the transmitter electrode can be greater than 20V, leading to a relatively large potential difference. On information and belief, the ME-USI306 includes a component that converts the low voltage to the high voltage.





82.    The ME-USI306 stylus includes "a stylus tip, one or more of the one or more electrodes being disposed at the stylus tip, wherein the high-voltage signals result from the one or more electrodes receiving the high voltage."  The ME-USI306 stylus has a tip with one or more electrodes, where the high-voltage signals result from the electrodes receiving the high voltage.





83.     Defendant, with knowledge of the '866 patent at least as early as the date of filing of this Complaint, also indirectly infringes the '866 patent under 35 U.S.C. § 271(b) and (c) by actively inducing and contributing to the infringement by others.

84.     Defendant has induced and continues to induce others to infringe at least claim 1 of the '866 patent by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe. Defendant encourages and instructs its customers and end users to obtain, install, configure, use, and activate the infringing products, with knowledge that the induced acts constitute infringement. Maxeye intentionally instructs its customers and end users to infringe through support information such as websites, videos, demonstrations, and other published information. *See, e.g.*, https://www.maxeye.com/for-chromebook/ (advertising features of Maxeye styluses); https://www.amazon.com/dp/B0BQ89FPSR/ (advertising features of the ME-USI306 stylus); https://www.youtube.com/watch?v=HkAqYCNxPQQ (describing the use and manufacturing of Maxeye styluses). For example, Maxeye advertises that the Accused Products can draw, sketch, color, take notes, and mark up PDFs on a touch screen device. *Id.* The Accused Products can connect to a touch screen device and implement infringing functionality. Defendant has knowingly induced infringement at least since the filing date of this Complaint.

85.     Defendant is liable as a contributory infringer of the '866 patent. Each of the infringing products is a material component for use in practicing the '866 patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use. *See, e.g.*, https://www.maxeye.com/for-chromebook/ (advertising features of Maxeye styluses); https://www.amazon.com/dp/B0BQ89FPSR/ (advertising features of the ME-USI306 stylus); https://www.youtube.com/watch?v=HkAqYCNxPQQ (describing the use and manufacturing of Maxeye styluses).

86.     With knowledge of the '866 patent, Defendant has and continues to willfully, deliberately, and intentionally infringe, directly and indirectly, the '866 patent.

**SEVENTH COUNT: INFRINGEMENT OF THE '720 PATENT**

87.     Wacom incorporates by reference the allegations contained in the foregoing paragraphs.

88.     Defendant has been and continues to directly infringe one or more claims of the '720 patent under 35 U.S.C. § 271(a) and § 271(g), including at least claim 19 of the '720 patent, in this District by making, using, importing, offering to sell, and selling in or into the United States the infringing products, such as  the ME-USI306 stylus, that infringe at least exemplary claim 19 of the '720 patent literally or by the doctrine of equivalents.

89.     For example, the ME-USI306 stylus is "an electronic pen." It allows users to digitally write, draw, and sketch on devices with touch sensors.



90.     The ME-USI306 stylus has a circuit board for an electronic pen. The circuit board of the ME-USI306 stylus is formed by practicing a method of manufacturing.

91.     The circuit board of the ME-USI306 stylus is manufactured by "forming, in a longitudinal direction of a flexible substrate, a circuit placement part at which a conductor pattern for a predetermined circuit is formed."





92.    The circuit board of the ME-USI306 stylus is manufactured by "forming a writing

pressure detector placement part at which a conductor pattern for connection to the writing pressure

detector is formed."





93.    The circuit board of the ME-USI306 stylus is manufactured by "forming a line part

between the writing pressure detector placement part and the circuit placement part and at which

a conductive line pattern electrically couples a component of the writing pressure detector and a circuit element of the predetermined circuit of the circuit placement part in such a manner that the circuit placement part, the writing pressure detector placement part, and the line part are arranged in the longitudinal direction and the writing pressure detector placement part is at an end part in the longitudinal direction."







94.    The circuit board of the ME-USI306 stylus is manufactured by "placing an electronic component on the circuit placement part and placing at least part of components of the writing pressure detector on the writing pressure detector placement part, and soldering between the electronic component and the conductor pattern for the predetermined circuit and between the writing pressure detector and the conductor pattern for connection."









95.     Defendant, with knowledge of the '720 patent at least as early as the date of filing of this Complaint, also indirectly infringes the '720 patent under 35 U.S.C. § 271(b) and (c) by actively inducing and contributing to the infringement by others.

96.     Defendant has induced and continues to induce others to infringe at least claim 19 of the '720 patent by, among other things, and with specific intent or willful blindness, actively

aiding and abetting others to infringe.  For example, on information and belief, Defendant encourages its personnel and/or its contractors to make the infringing products according to the method set forth in claim 19. Maxeye intentionally instructs personnel and/or its contractors to infringe through support information such as websites, videos, demonstrations, and other published information. *See e.g.,* https://www.youtube.com/watch?v=HkAqYCNxPQQ (describing the use and manufacturing of Maxeye styluses). Defendant has knowingly induced infringement at least since the filing date of this Complaint.

97.     Defendant is liable as a contributory infringer of the '720 patent. Defendant supplies or arranges for the supply of the components used in the manufacture of the infringing products, and on information and belief provides the design and/or the manufacturing steps for the infringing products. *See e.g.,* https://www.maxeye.com/for-chromebook/ (advertising features of Maxeye styluses); https://www.amazon.com/dp/B0BQ89FPSR/ (advertising features of the ME-USI306 stylus); https://www.youtube.com/watch?v=HkAqYCNxPQQ (describing the use and manufacturing of Maxeye styluses). Such components, including the design and manufacturing steps, are a material component for use in practicing the '720 patent and specifically made and not a staple article of commerce suitable for substantial non-infringing use.

98.     With knowledge of the '720 patent, Defendant has and continues to willfully, deliberately, and intentionally infringe, directly and indirectly, the '720 patent.

**PRAYER FOR RELIEF**

99.     WHEREFORE, Wacom respectfully requests that this Court enter judgment in its favor and against Maxeye, as follows:

100.    A judgment that Maxeye has infringed and infringes the '220, '519, '277, '356, '399, '866, and '720 patents;

101.    A permanent injunction restraining and enjoining Maxeye, its officers, partners, agents, servants, employees, parents, subsidiaries, divisions, affiliate corporations, joint ventures, other related business entities and all other persons acting in concert, participation, or in privity with it, and its successors and assigns, from infringing the asserted patents;

102.    An award of damages to Wacom arising from Maxeye's past and continuing infringement up until the date Maxeye is finally and permanently enjoined from further infringement, including compensatory damages;

103.    A determination that Maxeye's infringement of the '220, '519, '277, '356, '399, '866, and '720 patents has been willful, and an award of treble damages to Wacom pursuant to 35 U.S.C. § 284;

104.    A determination that this is an exceptional case and awarding Wacom's attorneys' fees pursuant to 35 U.S.C. § 285;

105.    An order awarding Wacom costs and expenses in this action;

106.    An order awarding Wacom pre- and post-judgment interest on its damages; and

107.    Such other and further relief in law or in equity as this Court deems just and proper.


## DEMAND FOR JURY TRIAL

108.    Plaintiff Wacom respectfully requests a jury trial on all issues so triable.

Dated: August 28, 2024

Respectfully submitted,

/s/ *Jerry D. Tice II*
Michael Zachary (admitted in EDTX)
California Bar No.  112479
Marc Belloli (admitted in EDTX)
California Bar No. 244290
mbelloli@bdiplaw.com
Richard Lin (admitted in EDTX)
California Bar No.  209233
Jerry D. Tice II (admitted in EDTX)
Texas State Bar No. 24093263
jtice@bdiplaw.com
Li Guo (pro hac vice to be submitted)
District of Columbia Bar No. 1018270
lguo@bdiplaw.com
**BUNSOW DE MORY LLP**
701 El Camino Real,
Redwood City, CA 94063
Tel: (650) 351-7248
Fax: (415) 426-4744

Attorneys for Plaintiff
*Wacom Co., Ltd.*