**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **WACOM CO., LTD.,** | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | **Civil Action No.: 2:24-cv-702-JRG** |
| | § | |
| **SHENZHEN QIANFENYI** | § | |
| **INTELLIGENT TECHNOLOGY CO.,** | § | |
| **LTD.,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| *Defendant.* | § | |
| | § | |

**DEFENDANT'S ANSWER TO AMENDED COMPLAINT FOR PATENT**
**INFRINGEMENT AND COUNTERCLAIMS**

Defendant Shenzhen Qianfenyi Intelligent Technology Co., Ltd. ("Defendant" or "Maxeye") hereby files this answer and counterclaims in response to Plaintiff Wacom Co., Ltd.'s ("Plaintiff" or "Wacom") Amended Complaint for Patent Infringement ("Amended Complaint") (Dkt. No. 40) as follows.

**THE PARTIES**

1.    Maxeye is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1 of the Amended Complaint, and therefore denies them.

2.    Maxeye admits that it is a company organized and existing under the laws of China. and has a principal place of business located at Room 2101, Building 3, Nanshan i Park Chongwen, 3370 Liuxian Avenue, Nanshan District, Shenzhen, 518073, China.

**JURISDICTION AND VENUE**

3.    The allegations in paragraph 3 of the Amended Complaint contain legal conclusions that require no answer. To the extent an answer is required, Maxeye denies the

allegations in paragraph 3 of the Amended Complaint.

4.      The allegations in paragraph 4 of the Amended Complaint contain legal conclusions that require no answer. To the extent an answer is required, Maxeye denies the allegations in paragraph 4 of the Amended Complaint.

5.      The allegations in paragraph 5 of the Amended Complaint contain legal conclusions that require no answer. To the extent an answer is required, Maxeye denies the allegations in paragraph 5 of the Amended Complaint.

6.      Maxeye admits that it has sold products (a) via one or more Internet sales platforms and that customers in this Judicial District, the State of Texas, and elsewhere in the United States may have access to those platforms; or (b) to third parties who then may sell the products to end customers in this Judicial District, the State of Texas, and elsewhere in the United States. The remaining allegations in paragraph 6 of the Amended Complaint contain legal conclusions that require no answer. To the extent an answer is required, Maxeye denies the remaining allegations in paragraph 6 of the Amended Complaint.

7.      Maxeye admits that it has sold products (a) via one or more Internet sales platforms and that customers in this Judicial District, the State of Texas, and elsewhere in the United States may have access to those platforms; or (b) to third parties who then may sell the products to end customers in this Judicial District, the State of Texas, and elsewhere in the United States. The remaining allegations in paragraph 7 of the Amended Complaint contain legal conclusions that require no answer. To the extent an answer is required, Maxeye denies the remaining allegations in paragraph 7 of the Amended Complaint.

8.      Maxeye admits that it has sold products (a) via one or more Internet sales platforms and that customers in this Judicial District, the State of Texas, and elsewhere in the

United States may have access to those platforms; or (b) to third parties who then may sell the products to end customers in this Judicial District, the State of Texas, and elsewhere in the United States. The remaining allegations in paragraph 8 of the Amended Complaint contain legal conclusions that require no answer. To the extent an answer is required, Maxeye denies the remaining allegations in paragraph 8 of the Amended Complaint.

9.      The allegations in paragraph 9 of the Amended Complaint contain legal conclusions that require no answer. To the extent an answer is required, Maxeye denies the allegations in paragraph 9 of the Amended Complaint.

10.     Maxeye admits that it does not maintain a physical place of business in the United States. The remaining allegations in paragraph 10 of the Amended Complaint contain legal conclusions that require no answer. To the extent an answer is required, Maxeye denies the remaining allegations in paragraph 10 of the Amended Complaint.

## THE INFRINGING PRODUCTS

11.     Maxeye denies that it makes, offers to sell and sells branded and non-branded infringing stylus products for use, sale, distribution, and exportation to and importation into the United States.

12.     Maxeye denies that it makes, offers to sell, and sells branded and non-branded infringing stylus products for use, sale, distribution, and exportation to and importation into the United States.

13.     Maxeye admits that Maxeye, Penoval, and Metapen styluses may be sold through the Walmart website. The information and product availability present at any given time on the websites one may access through the links listed in paragraph 13 of the Amended Complaint speaks for itself. For instance, several of the listed links lead to products that are not available for purchase. To the extent information and product availability on the listed links contradicts the

allegations of paragraph 13, Maxeye denies such allegations. Maxeye denies any further allegations in paragraph 13 and leaves Plaintiff to its proofs.

14.    Maxeye denies that it makes, offers to sell and sells branded and non-branded infringing stylus products for use, sale, distribution, and exportation to and importation into the United States.

## THE ASSERTED PATENTS

15.    Maxeye is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15 of the Amended Complaint, and therefore denies them.

## NOTICE OF THE ASSERTED PATENTS

16.    Maxeye denies the allegations of paragraph 16 of the Amended Complaint.

17.    Maxeye admits that it received a letter from Wacom dated December 4, 2023, regarding United States Patent Nos. 9,280,220 ("the '220 patent"); 9,977,519 ("the '519 patent"); 10,108,277 ("the '277 patent"); and 10,437,356 ("the '356 patent"). The letter speaks for itself. To the extent the allegations of paragraph 17 contradict the letter, Maxeye denies the allegations. Maxeye denies the remaining allegations of paragraph 17.

18.    Maxeye denies as untrue the allegations and characterizations of paragraph 18.

## FIRST COUNT: INFRINGEMENT OF THE '220 PATENT

19.    Maxeye incorporates by reference its response to the foregoing paragraphs as if fully set forth herein.

20.    The allegations in paragraph 20 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations and characterizations of paragraph 20.

21.    The allegations in paragraph 21 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around the words

"a stylus", but there is no reference as to from where the quotations are alleged to come. To the extent a response is required, Maxeye denies the allegations.

22.     The allegations in paragraph 22 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around the words "one or more sensors", and "4096 pressure sensitivity" but there is no reference as to from where the quotations are alleged to come. To the extent a response is required, Maxeye denies the allegations. Further, the website listed in paragraph 22 of the Amended Complaint speaks for itself. To the extent the allegations of paragraph 22 contradict the website, Maxeye denies the allegations.

23.     The allegations in paragraph 23 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. To the extent a response is required, Maxeye denies the allegations.

24.     The allegations in paragraph 24 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. To the extent a response is required, Maxeye denies the allegations.

25.     The allegations in paragraph 25 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. To the extent a response is required, Maxeye denies the allegations.

26.     The allegations in paragraph 26 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain

phrases but there is no reference as to from where the quotations are alleged to come. To the extent a response is required, Maxeye denies the allegations.

27.     The allegations in paragraph 27 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations.

28.     The allegations in paragraph 28 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations. Further, the websites listed in paragraph 28 of the Amended Complaint speak for themselves. To the extent the allegations of paragraph 28 contradict the websites, Maxeye denies the allegations.

29.     The allegations in paragraph 29 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations. Further, the websites listed in paragraph 29 of the Amended Complaint speak for themselves. To the extent the allegations of paragraph 29 contradict the websites, Maxeye denies the allegations.

30.     The allegations in paragraph 30 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations.

## <u>SECOND COUNT: INFRINGEMENT OF THE '519 PATENT</u>

31.     Maxeye incorporates by reference its response to the foregoing paragraphs of the Amended Complaint as if fully set forth herein.

32.     The allegations in paragraph 32 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations and characterizations of paragraph 32.

33.     The allegations in paragraph 33 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

34.     The allegations in paragraph 34 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

35.     The allegations in paragraph 35 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

36.     The allegations in paragraph 36 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

37.     The allegations in paragraph 37 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus

Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

38.     The allegations in paragraph 38 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

39.     The allegations in paragraph 39 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

40.     The allegations in paragraph 40 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations.

41.     The allegations in paragraph 41 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations. Further, the websites listed in paragraph 41 of the Amended Complaint speak for themselves. To the extent the allegations of paragraph 41 contradict the websites, Maxeye denies the allegations.

42.     The allegations in paragraph 42 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations. Further, the websites listed in paragraph 42 of the Amended Complaint speak for

themselves. To the extent the allegations of paragraph 42 contradict the websites, Maxeye denies the allegations.

43.    The allegations in paragraph 43 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations.

### THIRD COUNT: INFRINGEMENT OF THE '277 PATENT

44.    Maxeye incorporates by reference its response to the foregoing paragraphs of the Amended Complaint as if fully set forth herein.

45.    The allegations in paragraph 45 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations and characterizations of paragraph 45.

46.    The allegations in paragraph 46 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

47.    The allegations in paragraph 47 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

48.    The allegations in paragraph 48 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus

Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

49.    The allegations in paragraph 49 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations. Further, the website listed in paragraph 49 of the Amended Complaint speaks for itself. To the extent the allegations of paragraph 49 contradict the website, Maxeye denies the allegations.

50.    The allegations in paragraph 50 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

51.    The allegations in paragraph 51 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

52.    The allegations in paragraph 52 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations.

53.    The allegations in paragraph 53 of the Amended Complaint contain legal

conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations. Further, the websites listed in paragraph 53 of the Amended Complaint speak for themselves. To the extent the allegations of paragraph 53 contradict the websites, Maxeye denies the allegations.

54.　　The allegations in paragraph 54 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations. Further, the websites listed in paragraph 54 of the Amended Complaint speak for themselves. To the extent the allegations of paragraph 54 contradict the websites, Maxeye denies the allegations.

55.　　The allegations in paragraph 55 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations.

## FOURTH COUNT: INFRINGEMENT FO THE '356 PATENT

56.　　Maxeye incorporates by reference its response to the foregoing paragraphs of the Amended Complaint as if fully set forth herein.

57.　　The allegations in paragraph 57 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations and characterizations of paragraph 57.

58.　　The allegations in paragraph 58 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

59.　　The allegations in paragraph 59 of the Amended Complaint contain legal

conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

60.     The allegations in paragraph 60 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

61.     The allegations in paragraph 61 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

62.     The allegations in paragraph 62 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations.

63.     The allegations in paragraph 63 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations. Further, the websites listed in paragraph 63 of the Amended Complaint speak for themselves. To the extent the allegations of paragraph 63 contradict the websites, Maxeye denies the allegations.

64.     The allegations in paragraph 64 of the Amended Complaint contain legal

conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations. Further, the websites listed in paragraph 64 of the Amended Complaint speak for themselves. To the extent the allegations of paragraph 64 contradict the website, Maxeye denies the allegations.

65.     The allegations in paragraph 65 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations.

### FIFTH COUNT: INFRINGEMENT OF THE '399 PATENT

66.     Maxeye incorporates by reference its response to the foregoing paragraphs of the Amended Complaint as if fully set forth herein.

67.     The allegations in paragraph 67 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations and characterizations of paragraph 67.

68.     The allegations in paragraph 68 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

69.     The allegations in paragraph 69 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

70.     The allegations in paragraph 70 of the Amended Complaint contain legal

conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

71.    The allegations in paragraph 71 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

72.    The allegations in paragraph 72 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

73.    The allegations in paragraph 73 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations.

74.    The allegations in paragraph 74 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations. Further, the websites listed in paragraph 74 of the Amended Complaint speak for themselves. To the extent the allegations of paragraph 74 contradict the website, Maxeye denies the allegations.

75.    The allegations in paragraph 75 of the Amended Complaint contain legal

conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations. Further, the websites listed in paragraph 75 of the Amended Complaint speak for themselves. To the extent the allegations of paragraph 75 contradict the websites, Maxeye denies the allegations.

76.     The allegations in paragraph 76 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations.

### SIXTH COUNT: INFRINGEMENT OF THE '866 PATENT

77.     Maxeye incorporates by reference its response to the foregoing paragraphs of the Amended Complaint as if fully set forth herein.

78.     The allegations in paragraph 78 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations and characterizations of paragraph 78.

79.     The allegations in paragraph 79 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

80.     The allegations in paragraph 80 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

81.     The allegations in paragraph 81 of the Amended Complaint contain legal

conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

82.     The allegations in paragraph 82 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

83.     The allegations in paragraph 83 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations.

84.     The allegations in paragraph 84 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations. Further, the websites listed in paragraph 84 of the Amended Complaint speak for themselves. To the extent the allegations of paragraph 84 contradict the website, Maxeye denies the allegations.

85.     The allegations in paragraph 85 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations. Further, the websites listed in paragraph 85 of the Amended Complaint speak for themselves. To the extent the allegations of paragraph 85 contradict the websites, Maxeye denies the allegations.

86.     The allegations in paragraph 86 of the Amended Complaint contain legal

conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations.

### SEVENTH COUNT: INFRINGEMENT OF THE '720 PATENT

87.     Maxeye incorporates by reference its response to the foregoing paragraphs of the Amended Complaint as if fully set forth herein.

88.     Maxeye is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 88 of the Amended Complaint, and therefore denies them.

89.     The allegations in paragraph 89 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations and characterizations of paragraph 89.

90.     The allegations in paragraph 90 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

91.     The allegations in paragraph 91 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations.

92.     The allegations in paragraph 92 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

93.     The allegations in paragraph 93 of the Amended Complaint contain legal

conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

94.     The allegations in paragraph 94 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

95.     The allegations in paragraph 95 of the Amended Complaint contain legal conclusions that require no answer. Further, the Plaintiff used quotation marks around certain phrases but there is no reference as to from where the quotations are alleged to come. Thus Maxeye is unable to admit or deny the veracity or location of this quote. To the extent a response is required, Maxeye denies the allegations.

96.     The allegations in paragraph 96 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations.

97.     The allegations in paragraph 97 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations. Further, the website listed in paragraph 97 of the Amended Complaint speaks for itself. To the extent the allegations of paragraph 97 contradict the website, Maxeye denies the allegations

98.     The allegations in paragraph 98 of the Amended Complaint contain legal

conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations. Further, the websites listed in paragraph 98 of the Amended Complaint speak for themselves. To the extent the allegations of paragraph 98 contradict the website, Maxeye denies the allegations.

99.     The allegations in paragraph 99 of the Amended Complaint contain legal conclusions that require no answer. To the extent a response is required, Maxeye denies the allegations.

**PRAYER FOR RELIEF**

100.     These paragraphs set forth the relief Wacom requests, to which no response is required. Nevertheless, Maxeye denies that Wacom is entitled to any relief, and specifically denies all the allegations and prayer for relief contained in paragraphs 100 through 108 of Wacom's requested relief.

101.     These paragraphs set forth the relief Wacom requests, to which no response is required. Nevertheless, Maxeye denies that Wacom is entitled to any relief, and specifically denies all the allegations and prayer for relief contained in paragraphs 100 through 108 of Wacom's requested relief.

102.     These paragraphs set forth the relief Wacom requests, to which no response is required. Nevertheless, Maxeye denies that Wacom is entitled to any relief, and specifically denies all the allegations and prayer for relief contained in paragraphs 100 through 108 of Wacom's requested relief.

103.     These paragraphs set forth the relief Wacom requests, to which no response is required. Nevertheless, Maxeye denies that Wacom is entitled to any relief, and specifically denies all the allegations and prayer for relief contained in paragraphs 100 through 108 of Wacom's requested relief.

104.    These paragraphs set forth the relief Wacom requests, to which no response is required. Nevertheless, Maxeye denies that Wacom is entitled to any relief, and specifically denies all the allegations and prayer for relief contained in paragraphs 100 through 108 of Wacom's requested relief.

105.    These paragraphs set forth the relief Wacom requests, to which no response is required. Nevertheless, Maxeye denies that Wacom is entitled to any relief, and specifically denies all the allegations and prayer for relief contained in paragraphs 100 through 108 of Wacom's requested relief.

106.    These paragraphs set forth the relief Wacom requests, to which no response is required. Nevertheless, Maxeye denies that Wacom is entitled to any relief, and specifically denies all the allegations and prayer for relief contained in paragraphs 100 through 108 of Wacom's requested relief.

107.    These paragraphs set forth the relief Wacom requests, to which no response is required. Nevertheless, Maxeye denies that Wacom is entitled to any relief, and specifically denies all the allegations and prayer for relief contained in paragraphs 100 through 108 of Wacom's requested relief.

108.    These paragraphs set forth the relief Wacom requests, to which no response is required. Nevertheless, Maxeye denies that Wacom is entitled to any relief, and specifically denies all the allegations and prayer for relief contained in paragraphs 100 through 108 of Wacom's requested relief.

## **DEMAND FOR JURY TRIAL**

109.    This paragraph is a statement to which no response is required.

Maxeye asserts the following affirmative defenses. To the extent any of the defenses, in whole or in part, relates to or negates an element of Wacom's claims, Maxeye in no way seeks to relieve Wacom of its burden of proof or persuasion on that element. All defenses are pled in the alternative and do not constitute an admission of liability or that Wacom is entitled to any relief whatsoever. Maxeye reserves any and all rights to assert additional defenses and/or counterclaims as additional facts are learned during discovery.

## FIRST AFFIRMATIVE DEFENSE

### (No Infringement)

Maxeye does not infringe and has not infringed any valid and enforceable claim of the asserted patents, literally or under the doctrine of equivalents, directly or indirectly, willfully or otherwise. Maxeye has not performed any act and is not proposing to perform any act in violation of any rights validly belonging to Wacom.

## SECOND AFFIRMATIVE DEFENSE

### (Invalidity)

The asserted claims of the asserted patents are invalid for failure to satisfy the requirements set forth in Title 35 of the United States Code, including without limitation, for example, Sections 101, 102, 103, 111, 112, 116 and/or 132.

## THIRD AFFIRMATIVE DEFENSE

### (Limitation on Damages)

Wacom's claims for damages are statutorily limited under 35 U.S.C. §§ 286, 287, and/or 288.

## FOURTH AFFIRMATIVE DEFENSE

### (Prosecution History Estoppel and Disclaimer)

Wacom's claims are barred in whole or in part by the doctrines of prosecution history estoppel and/or prosecution disclaimer.

## FIFTH AFFIRMATIVE DEFENSE

### (Ensnarement)

Wacom's claims are barred or limited in whole or in part by the doctrine of ensnarement.

## EIGHTH AFFIRMATIVE DEFENSE

### (No Basis for Injunctive Relief)

Wacom is not entitled to injunctive relief under any theory, at least because: (1) Wacom has not suffered nor will it suffer irreparable harm because of Maxeye's conduct; (2) any harm to Wacom would be outweighed by the harm to Maxeye if an injunction were entered; (3) Wacom has an adequate remedy at law even if it were to prevail in this action; and (4) the public interest would not be served by an injunction in favor of Wacom.

## NINTH AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Wacom has failed to state a claim upon which relief can be granted.

## TENTH DEFENSE

### (Lack of Standing)

Wacom's claims are barred by a lack of standing.

## ELEVENTH DEFENSE

### (Not an Exceptional Case)

If Wacom is entitled to any remedy, Wacom is not entitled to a finding that this case is exceptional warranting attorneys' fees under 35 U.S.C. § 285, or pursuant to the Court's inherent power.

## TWELFTH AFFIRMATIVE DEFENSE

### (No Damages)

The claims set forth in the Amended Complaint are barred, in whole or in part, because Wacom has suffered no injury or harm from the complained-of actions in the Amended Complaint. Maxeye has not made false or misleading descriptions or representations of facts that have deceived, or have the capacity to deceive, a substantial segment of potential consumers, or that have influenced consumers' purchasing decisions. The damages alleged in the Amended Complaint are speculative, and Wacom's claims for damages must fail.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

The claims set forth in the Amended Complaint are barred or reduced by the applicable statutes of limitation and/or statute of repose.

## RESERVATION OF AFFIRMATIVE DEFENSES

Maxeye hereby reserves the right to supplement its affirmative defenses as discovery proceeds in this case.

## COUNTERCLAIMS

In accordance with Rule 13 of the Federal Rules of Civil Procedure, Maxeye hereby alleges and asserts the following Counterclaims against Wacom.

## THE PARTIES

1.      Counterclaim Plaintiff Shenzhen Qianfenyi Intelligent Technology Co., Ltd. ("Maxeye") is a foreign company organized and existing under the laws of China and has a principal place of business located at Room 2101, Building 3, Nanshan i Park Chongwen, 3370 Liuxian Avenue, Nanshan District, Shenzhen, 518073, China.

2.      Based on Wacom's Amended Complaint for Patent Infringement (Am. Compl. ¶ 1, Dkt. No. 40) and on information and belief, Counterclaim Defendant Wacom Co., Ltd. ("Wacom") is an entity organized under the laws of Japan and has its principal place of business at 2-510-1 Toyonodai, Kazo-shi, Saitama 349-1148, Japan.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

4.      The Court has personal jurisdiction over Wacom at least by virtue of Wacom's consent to the personal jurisdiction of this Court by filing the Complaint (Dkt. No. 1) and Amended Complaint (Dkt. No. 40) against Maxeye in this District.

5.      For the purposes of the Counterclaims set forth herein, and without waiving any defense of lack of venue or improper venue in connection with Wacom's Amended Complaint and causes of action, venue is proper in this District at least because Wacom has submitted to personal jurisdiction in this Court and has consented to this venue by filing its Complaint and Amended Complaint here.

## FACTUAL BACKGROUND

**A.     RAND Obligations Arising from Standard Setting Organizations**

6.     Technical standards play a vital role in promoting interoperability, innovation, and competition in the stylus and touchscreen technology industry. Through coordination among manufacturers, chipset developers, original equipment manufacturers ("OEMs"), and interface designers, standard-setting organizations ("SSOs") enable devices and accessories to work together consistently and efficiently.

7.     One such organization, the Universal Stylus Initiative, Inc. ("USI"), defines and maintains an open specification for interoperable communication between an active stylus and touch-enabled devices such as phones, tablets, and computing and entertainment platforms. This standardized protocol allows a stylus from one manufacturer to function seamlessly across devices made by different vendors.

8.     Under Section 1.11 of the USI Bylaws,[1] the term "Participants" is defined to include Promoters, Contributors, Adopters, and their Affiliates, as well as any other levels of participation designated by the USI Board of Directors.

9.     To encourage broad adoption of its specifications while avoiding anti-competitive licensing practices, USI adopted a binding contractual framework known as the USI Intellectual Property Rights Policy (the "USI IPR Policy").[2]

10.     Under Section 1.5 of the USI IPR Policy, "Necessary Claims" are defined as those patent claims necessarily infringed by implementation of a final USI specification and that

---

[1] Universal Stylus Initiative, *Bylaws*, https://universalstylus.org/wp-content/uploads/2019/07/USI-Bylaws.pdf (last visited June 11, 2025).

[2] Universal Stylus Initiative, *Intellectual Property Rights Policy*, https://universalstylus.org/wp-content/uploads/2019/07/USI-IPR-Policy_FINAL_APPROVED.pdf (last visited June 11, 2025).

cover technologies enabling interoperability, interconnection, or communication.

11.     Under Section 3 of the USI IPR Policy, a Participant that declares Necessary Claims agrees to offer licenses on Reasonable and Non-Discriminatory ("RAND") terms to all other USI Participants implementing the relevant specification. The USI IPR Policy is a binding contractual agreement among Participants and protects both innovation and fair competition.

12.     Wacom and Maxeye are both listed as "Contributors" on USI's publicly available member directory.[3] As such, they are each a Participant under the USI Bylaws and are contractually bound by—and entitled to the protections of—the USI IPR Policy, including the right to license and be licensed under RAND terms.

13.     These licensing obligations prevent "patent hold-up" by ensuring that Participants who adopt the USI standard will not be subject to exclusionary enforcement tactics or supra-competitive royalty demands once they are locked into using the standard.

14.     Section 13 of the USI IPR Policy further provides that all obligations under the policy "shall be governed by the principles of good faith and fair dealing." This good faith obligation applies to all RAND licensing conduct between Participants, including Wacom's conduct toward Maxeye.

**B.     Stylus Standards Published by Universal Stylus Initiative**

15.     In addition to being a listed Participant, Maxeye was publicly recognized as one of the first manufacturers to complete certification testing for products conforming to the USI 1.0

---

[3] Universal Stylus Initiative, *Members*, https://universalstylus.org/members/ (last visited June 11, 2025).

Specification, the industry's first open and non-proprietary active stylus standard.[4]

16.     The USI press release credited Maxeye and other early Contributors with helping launch the USI ecosystem by validating cross-device stylus interoperability through compliance testing and early product implementations.

17.     Maxeye's stylus products were among the first to pass independent testing for compliance with USI's electrical signaling and communication protocol requirements. These early contributions provided proof of concept for the USI standard and played a meaningful role in promoting industry-wide adoption.

18.     Today, although some other pen standards remain in use, the current USI specification 2.0 has been widely adopted in the active stylus industry. According to USI's publicly-available member list and product registry, both Wacom and Maxeye are official Participants and Contributors to the standard.

19.     As a current USI Participant, Wacom has actively disclosed patents to USI as "Necessary Claims" pursuant to Section 2 of the USI IPR Policy. In particular and on information and belief, Wacom has declared that at least U.S. Patent Nos. 9,280,220 (the "'220 Patent"); 9,977,519 (the "'519 Patent"); 10,108,277 (the "'277 Patent"); and 10,437,356 (the "'356 Patent") contain Necessary Claims (collectively, the "Necessary Claims Patents").

20.     Under the IPR Policy and related public statements, Wacom is contractually obligated to offer RAND licenses for the Necessary Claims Patents to other Participants, including Maxeye.

---

[4] *Universal Stylus Initiative,* USI Launches First Open Standard, Active Stylus Certification Program (June 10, 2020), https://universalstylus.org/usi-launches-first-open-standard-active-stylus-certification-program/.

**C.    WACOM Failed to Comply with its RAND Obligations Pursuant to the USI IPR Policy**

21.    On December 4, 2023, Wacom sent Maxeye a letter asserting that Maxeye infringed the Necessary Claims Patents. Wacom further stated that it was "willing to license the claims of its disclosed patents that are necessary to practice the USI specifications under reasonable terms and conditions to other USI members," including Maxeye. The letter did not include or attach any claim charts, did not propose any specific royalty rate, and did not include a RAND offer for the Necessary Claims Patents.

22.    On February 14, 2024, Wacom sent a follow up letter to Maxeye, repeating its prior invitation to negotiate.  This follow up letter also lacked claim charts, failed to make an actual RAND license offer, and failed to specify a specific royalty rate.

23.    On April 7, 2024, Maxeye responded by email and expressed its commitment to intellectual property rights, its interest in resolving the matter amicably, and its willingness to engage in "detailed discussions with Wacom on this issue." Maxeye requested more information to understand the technical scope of the allegations and to assess the possibility of entering into a RAND license.

24.    Wacom replied on April 17, 2024, proposing that the parties speak by video call to discuss the matter. Despite Maxeye's request, Wacom's April 17, 2024 response did not provide any further details about Wacom's infringement allegations (no identification of claims that were allegedly infringed and no claim charts or other claim by claim or limitation by limitation allegations of infringement).

25.    Despite Maxeye's willingness to engage in detailed discussions, Wacom never provided Maxeye with an offer—RAND or otherwise—before filing its original Complaint on

August 28, 2024, in this Court. Dkt. No. 1 ¶ 101 (Wacom's Complaint requesting that the Court enter "[a] permanent injunction restraining and enjoining Maxeye…from infringing the asserted patents [including the Necessary Claims Patents]"); Dkt. No. 40 ¶ 102 (Wacom's Amended Complaint requesting that the Court enter "[a] permanent injunction restraining and enjoining Maxeye…from infringing the asserted patents [including the Necessary Claims Patents]").  Nor did Wacom engage in any substantive licensing discussion or negotiation following Maxeye's good-faith response.

26.    Wacom's conduct violated its obligations under the USI IPR Policy, which prohibits a Participant from seeking "an injunction, exclusion order, or similar remedy" against another Participant without first making a good faith offer to license the Necessary Claims Patents on RAND terms. Wacom's failure to extend any such offer despite Maxeye's engagement before filing suit and seeking an injunction deprived Maxeye of its contractual rights and upended the licensing framework on which USI relies.

27.    Wacom's failure to provide a RAND license offer, and its decision to pursue litigation seeking injunctive relief without prior negotiation, are inconsistent with the purpose and structure of the USI IPR Policy, and constitute a breach of its binding commitments under that policy.

28.    As a Participant and Contributor to USI, Maxeye is ready, willing, and able to license any patent deemed valid, enforceable, and essential to the USI specification on RAND terms.

29.    To date, despite Wacom's pre-suit assertion that at least the Necessary Claims Patents "include claims that are necessary to the USI Specifications," Wacom has refused to identify the specific patent claims that it deems "Necessary Claims" under the USI IPR Policy

unless or until Maxeye identifies any claims that Maxeye contends to be Necessary Claims first.

30.     Maxeye has incurred damages due to Wacom's breach, including but not limited to: attorneys' fees and litigation costs, loss of the contractual opportunity to negotiate a RAND license, disruption to business operations, and reputational harm from being named in public litigation.

## **FIRST COUNT**
### **(Breach of Contract – Wacom Breached the USI IPR Policy)**

31.     Maxeye realleges and incorporates the allegations in paragraphs 1 through 30 above as if fully set forth herein.

32.     The USI IPR Policy constitutes a binding contract among USI Participants, including Wacom and Maxeye. By publicly adopting the IPR Policy and declaring Necessary Claims pursuant to its procedures, Wacom assented to the policy's licensing obligations.

33.     On information and belief, Wacom declared that the '220, '519, '277, and '356 Patents each contain Necessary Claims as defined in Section 1.5 of the USI IPR Policy. These declarations trigger Wacom's licensing obligations under Section 3 of the policy.

34.     Maxeye, as a USI Participant, is an intended third-party beneficiary of Wacom's RAND licensing obligations under the USI IPR Policy. By joining USI and agreeing to implement the USI specification, Maxeye relied on the availability of RAND licenses to Necessary Claims declared under the policy.

35.     Wacom breached these obligations by failing to provide a RAND offer prior to filing suit, despite Maxeye's good faith request to engage in licensing discussions. Wacom's December 4, 2023 and February 14, 2024 letters expressed a general willingness to license but failed to contain any actual RAND license offer or terms, and Wacom refused to provide follow-up information requested by Maxeye before filing its lawsuit.

36.     Wacom's breach deprived Maxeye of its contractual rights and subjected Maxeye to unnecessary litigation expenses, coercive legal leverage, and business disruption. This conduct is inconsistent with the purpose of the USI framework, which is to promote fair, open, and efficient licensing among implementers of the specification.

37.     As a result of this breach, Maxeye has suffered monetary and non-monetary damages in an amount to be proven at trial, including attorneys' fees, internal resource diversion, loss of business opportunities, and reputational harm.

## SECOND COUNT
**(Breach of Contract – Wacom Breached Its Obligation to Negotiate a RAND License in Good Faith with Maxeye)**

38.     Maxeye realleges and incorporates the allegations in paragraphs 1 through 37 above as if fully set forth herein.

39.     Section 13 of the USI IPR Policy imposes an obligation on Participants to perform their obligations in good faith.

40.     Wacom failed to engage in good faith RAND licensing discussions and instead used its declarations under the USI framework to gain leverage through litigation.

41.     Wacom refused to respond substantively to Maxeye's communications with a RAND offer and failed to negotiate a license before suing—despite representing that it was willing to do so.

42.     Wacom's actions are inconsistent with the obligations of good faith and fair dealing and undermine the integrity of the RAND licensing framework in which Maxeye and other USI Participants rely.

43.     As a result, Maxeye has suffered substantial harm and continues to incur unnecessary legal and business costs due to Wacom's failure to perform in good faith.

**THIRD COUNT**
**(Unjust Enrichment – Wacom Benefitted from Maxeye's Adoption of USI Standard without Offering a License)**

44.    Maxeye realleges and incorporates the allegations in paragraphs 1 through 43 above as if fully set forth herein.

45.    Wacom has received and continues to receive substantial benefits from Maxeye's early and ongoing contributions to and adoption of the USI specification, including Maxeye's role in validating the interoperability of USI-compliant styluses and accelerating adoption across the industry.

46.    Maxeye is a Contributor to the USI specification and was one of the first companies to achieve certification under the USI 1.0 open standard, as publicly recognized by USI. Its certified stylus products demonstrated technical feasibility and reliability for cross-platform operation, laying the groundwork for other implementers, including Wacom, to benefit from a functioning, tested ecosystem.

47.    Despite these benefits, Wacom failed to offer Maxeye a license to its Necessary Claims Patents on RAND terms, in violation of its obligations under the USI IPR Policy.

48.    It would be inequitable for Wacom to retain the benefits of a standard built in part on Maxeye's pioneering efforts and early compliance testing, while withholding a RAND license and instead using the threat of litigation to extract supra-RAND terms.

49.    As a result of Wacom's conduct, Maxeye has suffered economic harm, reputational damage, and litigation costs, and Wacom has been unjustly enriched.

50.    Maxeye is entitled to restitution or damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Maxeye respectfully requests the following relief:

51.    That the Court enter judgment in favor of Maxeye on all Counts of its

Counterclaims;

52.     That the Court award Maxeye damages in an amount to be proven at trial,

including consequential and compensatory damages for breach of contract;

53.     That the Court award equitable relief requiring Wacom to comply with its RAND

obligations under the USI IPR Policy;

54.     That the Court award costs and reasonable attorneys' fees to Maxeye; and

55.     That the Court grant such other and further relief as the Court deems just and

proper.


Dated: June 18, 2025                    Respectfully submitted,

                                        /s/ Mark A. Miller
                                        _____
                                        Mark A. Miller
                                        DORSEY & WHITNEY LLP
                                        111 South Main Street, Suite 2100
                                        Salt Lake City, UT 84111
                                        (801) 933-7360
                                        miller.mark@dorsey.com

                                        Shannon Bjorklund
                                        DORSEY & WHITNEY LLP
                                        50 South Sixth Street, Suite 1500
                                        Minneapolis, MN 55402
                                        (612) 340-2600
                                        bjorklund.shannon@dorsey.com

                                        Hui Shen
                                        Dorsey & Whitney LLP
                                        1401 New York Avenue NW, Suite 900
                                        Washington DC, 20005
                                        (202) 442-3000
                                        shen.hui@dorsey.com

                                        Erin Kolter
                                        DORSEY & WHITNEY LLP

701 Fifth Avenue, Suite 6100
Seattle, WA 98104
(206) 903-8800
kolter.erin@dorsey.com

William Cravens
DORSEY & WHITNEY LLP
1400 Wewatta Street, Suite 400
Denver, CO 80203
(720) 629-3400
cravens.william@dorsey.com

Charles Ainsworth
PARKER BUNT & AINSWORTH
100 E Ferguson
Suite 418
Tyler, TX 75702
(903) 531-3535
charley@pbatyler.com

**ATTORNEYS FOR DEFENDANT AND
COUNTERCLAIM PLAINTIFF
SHENZHEN QIANFENYI INTELLIGENT
TECHNOLOGY CO., LTD.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 18th day of June, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notifications of such filing to all counsel of record who have appeared in this case and that any other counsel of record have been served by another authorized manner.

*/s/ Mark Miller*
Mark A. Miller

35